STATE OF IOWA, Appellee, v. JOHN BOSCH, Appellant.

**CRIMINAL LAW:** Accomplice—Corroboration—Sufficiency of. Corroboration of the testimony of an accomplice is sufficient to carry the case to the jury, if, when rationally considered, it has some legitimate tendency to connect the accused with the commission of the crime and thereby lend support to the credibility of the accomplice (Sec. 5489, Code, 1897). Corroborative evidence reviewed and held to carry the case to the jury.

**CRIMINAL LAW:** Harmless Errors—Tendency to Disregard. The tendency of this court is to restrict, rather than to enlarge, the application of rules by which courts were once wont to imagine or presume prejudice because of a technically inexact statement of the law to the jury, unless the error is of such material character that there is reasonable ground to fear that the jury has been led astray to the injury of the losing party.

PRINCIPLE APPLIED: The court instructed fully and correctly as to the nature and extent of the corroborative evidence necessary in order to convict on the testimony of an accomplice, except that the court's language would bear the *inference* that the testimony of the accomplice in instant case was "credible". Other instructions fully stated the necessity of proof beyond a reasonable doubt of every material fact, in order to authorize conviction, and suggested the proper care to be exercised by the jury in considering the credibility of the several witnesses. *Held,* harmless and nonreversible error.

*Appeal from Taylor District Court.*—HON. H. K. EVANS, Judge.

SATURDAY, JUNE 19, 1915.

REHEARING DENIED TUESDAY, OCTOBER 5, 1915.

THE defendant was indicted and convicted upon a charge of larceny. His motion for new trial having been overruled, he brings the case to this court upon appeal.—*Affirmed.*

*W. M. Jackson* and *McCoun & Brant,* for appellant.

*George Cosson,* Attorney General, and *John Fletcher,* Assistant Attorney General, for the State.

WEAVER, J.—A team of horses belonging to Henry Russell was stolen from the owner's premises in the south part of Taylor county, near the Missouri state line, on the night of March 10, 1914. On the morning of the second day thereafter, they were found in a livery stable in the town of Maryville, across the line in Missouri. The theory of the state is that on the afternoon of March 10th, the appellant, who lived in Blockton, Taylor county, of this state, together with one Lloyd Conder, hired a team at a livery stable in Blockton and drove south to Isadora, on the Missouri side of the state line. From this place, they are said to have gone to the town of Athelstan, on the Iowa side of the line, where they remained until about ten o'clock P. M., and then went on about six miles to the Russell farm, where they stole the horses. The larceny having been accomplished, the state further claims that appellant drove home to Blockton with the team which they had hired at that place, while Conder took the stolen team to a livery stable in Maryville, Missouri, where they were afterwards discovered and reclaimed by the owner. Both appellant and Conder were indicted for the alleged offense. Conder entered a plea of guilty, and at the time of the trial below, had been in the penitentiary several months. He was used as a witness for the state against appellant and told in detail his story of the crime. According to this testimony, appellant and Conder were together in Blockton from

time to time prior to the larceny, and, appellant having proposed that they together steal the team, arrangements were made therefor, it being the purpose to take the horses to Maryville, Missouri, and sell them and divide the proceeds. Pursuant to this plan, he further says, appellant procured a team at a livery stable in Blockton and, according to appointment, drove to a certain bridge where Conder was awaiting him. They drove south, arriving at Isadora about three or four o'clock, going thence to Athelstan, arriving there about seven or eight o'clock. An hour or two later, they continued in the direction of Russell's farm. On the road there, Conder says, they stole a buggy and harness belonging to one Bounds, tying the buggy behind the one they were driving. Having taken the Russell horses, they harnessed them with the stolen harness and hitched them to the stolen buggy. Then, he says, appellant drove back to Blockton with the hired team, while he himself drove to Maryville with the stolen outfit. Before reaching Maryville, he left the buggy by the roadside, then mounted one horse, and, leading the other, he took them to the stable where they were found some twenty-four hours later. In the buggy driven from Blockton were a pair of halters belonging to that team, and, according to Conder, one of these halters was put upon one of the horses stolen from Russell, and according to the undisputed evidence, this halter was found on one of the Russell horses in the stable at Maryville. It is conceded that, on the day following the theft of the horses, the appellant, having returned the hired team to its stable in Blockton, took a railway train to Maryville, where he again met Conder. According to Conder, appellant's errand there was to obtain a division of the proceeds of the sale of the horses; but, finding that Conder had not been able to make the sale, it was arranged that appellant should return home, and that Conder should find sale for the horses and bring the money to Blockton on the following Friday. Appellant did return to Blockton the next morning.

As a witness, appellant admits his going to Isadora and Athelstan with Conder on the evening of March 10th, but claims that he left his companion at that place and returned home. In explanation of the trip, he says (and in this he has some corroboration) that Conder was in hiding to avoid arrest or process of some kind in connection with another matter, and that at Conder's request, he hired the team for the purpose of driving him across the state line into Missouri. He further says that before he left Conder at Athelstan on the evening of the 10th, Conder discovered that he had left his suit case or gripsack in Blockton, and, as he did not wish to appear publicly in that place and run the risk of arrest or service of process, as above stated, it was arranged that appellant should come to Maryville the next day and bring the grip. This, he says, was his only errand in Maryville that day. Other evidence was offered by the state, largely directed to the fact that the two young men were seen together at Isadora, Athelstan and Maryville on the occasions already mentioned; but, as there is no dispute of these facts, we need spend no further time on their statement. There was also some corroboration of the story of the appellant with reference to other material parts of his testimony. But there is no room for argument or dispute upon the proposition that the case was one for the jury, unless we can say, as a matter of law, from the record before us, that no corroboration was shown of the testimony of Conder, who is a confessed accomplice.

It is urgently and ably argued for appellant that the record is void of any competent corroborating evidence which tends to connect him with the commission of the offense charged, but we find that this position cannot 1. CRIMINAL LAW: accomplice: corroboration: sufficiency of. be sustained without ignoring testimony which, if believed by the jury, satisfies the requirement of the statute relating to the corroboration of an accomplice, Code Sec. 5489. For example, appellant admits

that on the night of the alleged crime, he accompanied Conder from Blockton to Isadora and thence to Athelstan, where Conder made a call upon a young lady acquaintance. After waiting a while, he says he went to the place and called Conder, who came out and they drove together north. Thus far, as to the association of the two persons together on that evening, appellant himself furnishes the needed corroboration down to the point of his departure from Athelstan. The young lady upon whom the call was made testifies that she saw them start away together in the buggy. In fairness to the appellant, it should be said, however, that he claims they both came back to town together before he left for Blockton, but so far as any disinterested witness speaks, they were last seen together driving from Athelstan late in the evening of the date on which the horses were stolen, and in easy reach of the place where the crime was committed. Appellant also himself corroborates the state's theory of the close association of the parties within a few hours after the horses were taken, and their coming together at or near the stable where the horses were being kept. His explanation of his trip to Missouri on the day following the theft has a somewhat strained and unnatural appearance. It may, of course, be true, but its credibility and weight were for the jury. But perhaps the most significant circumstance, and the one hardest to explain on the theory of appellant's entire innocence, is the one we have mentioned with reference to a halter belonging to a horse procured by him at Blockton and found on one of the stolen horses in Maryville. It is not only corroborative of the testimony of the accomplice, but fills the demand of the statute for "other evidence tending to connect the defendant with the commission of the offense". It was appellant who hired the team at Blockton; it was he to whom the outfit, including the halter, was committed, and it was he who returned the team and buggy without the halter, which was found on the Russell horse in Maryville. If, for instance, a

cap proved to belong to appellant had been found in the Russell stable on the following morning, and it further appeared that he had returned home bareheaded late the night before, no one would deny the competency of such proof or its legitimate tendency to connect him with the commission of the offense, yet no good reason can be assigned why evidence of the latter state of facts should be held competent for that purpose which does not apply to the circumstance which is here shown. In so holding, the court does not assume the truth of the testimony or that it established the guilt of the accused, but rather that it makes a case upon which the state is entitled to submit the issues to the finding of a jury. As one competent item of corroborating evidence tending to connect the accused with the commission of the offense is as effective as any greater number to take the case to the jury, we need not prolong the discussion of the testimony. We are quite clear that the corroboration is sufficient.

The point upon which counsel dwell very largely is that the corroborating evidence, if all true, is still consistent with innocence of the appellant, and therefore is not such corroboration as the law requires. But the sufficiency of the corroboration is not dependent upon any such test, nor do we think counsel can present any well considered precedent or cite us to any established principle of law which sustains the rule for which they contend. The statute does not require that the corroboration of itself alone shall be sufficient to make a conclusive case of guilt or that it shall be entirely inconsistent with innocence. It is sufficient if, when rationally considered, it has some legitimate tendency to connect the accused with the commission of the crime, and thereby lend support to the credibility of the accomplice. And it is the case thus made by the testimony of the accomplice, together with the corroborating evidence and other proof admitted on the trial, on which the verdict is to be returned. If the question of guilt depends upon circumstantial evidence, then, of

course, each fact, the establishment of which is essential to conviction, must be found inconsistent with any rational theory of innocence; but that rule is not here applicable.

2. CRIMINAL LAW: harmless errors: tendency to disregard. The only other point argued for appellant is upon an exception to paragraph 9 of the court's charge to the jury, which reads as follows:

"Lloyd Conder, one of the witnesses for the state, has testified in this case and has admitted he was present and aided in stealing the horses referred to in the indictment. You are instructed: That the defendant, John Bosch, cannot be convicted on the testimony of Lloyd Conder alone; but in order to justify a conviction, the testimony of said Lloyd Conder must be corroborated by other credible evidence which shall tend to connect the defendant with the commission of the crime charged, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof, but it must tend to connect the defendant with the commission of the crime charged. To be sufficient, the corroborating evidence should apply to some part of the testimony that is material to the issue. It must also tend to show that the defendant committed the crime charged in the indictment. It is not sufficient corroboration to prove the offense was in fact committed in a manner described by Lloyd Conder, the accomplice, but you must further find that there is evidence which involves the defendant with the commission of the crime charged. And where circumstances alone are relied upon as corroborative evidence, the circumstances must be criminative and be inconsistent to some extent with the innocence of the defendant."

The exception taken is to the effect that the instruction in substance assumes or takes for granted the truth of Conder's testimony, and that all the jury is required to do to convict the defendant is to find that Conder has been corroborated

in some manner by the testimony of other witnesses. It must be admitted that, when submitted to minute criticism, this charge is open to some objection. The statement of the rule would have been improved if, instead of saying "but in order to justify a conviction, the testimony of Lloyd Conder must be corroborated by other credible evidence", the court had said to the jury, "but in order to convict upon the testimony of Conder, even though you believe it to be true, you must further find it corroborated by other credible evidence", etc., thus avoiding the inference which appellant draws that the phrase "other credible evidence", immediately following a reference to Conder's testimony, is in the nature of concession or recognition of its credibility. But we are of the opinion that there is no reversible error in the charge as given. Its chief fault, if any, is not in anything it says, but in the wrong inference or implication which a jury may draw therefrom. Taking the charge as a whole, it states clearly the usual rules as to the necessity that each and every material fact in the state's case be established beyond a reasonable doubt, and suggests the care which the jury should exercise in considering the credibility of witnesses and weight of testimony, matters of which the jurors are told they are the sole judges; and, in the absence of anything in the record to indicate that they were in fact misled in any respect, this court finds no showing of error upon which it can consistently interfere with the verdict.

It may be added that the industry of counsel has failed to find any precedent for a reversal because of this instruction, which is often given in substantially the same form, except in the state of Texas, where there seem to be decisions sustaining the point made by appellant. The tendency of this court is to restrict rather than to enlarge the application of rules by which courts were once wont to imagine or presume prejudice because of a technically inexact statement of the law to the jury, unless the error is of such material character

that there is reasonable ground to fear that the jury has been led astray, to the injury of the losing party.

We find no sufficient reason for ordering a new trial, and the judgment appealed from is therefore—*Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.