STATE OF IOWA, Appellee, v. SETH SMITH, Appellant.

CRIMINAL LAW: Affidavits in re Change of Venue. A petition for
1 change of venue in a criminal case, without the supporting affidavits required by statute, is fatally defective. (Sec. 5344, Code of 1897.)

CRIMINAL LAW: Change of Venue—Amendment to Petition. The
2 court, after properly overruling a petition for a change of venue for insufficiency thereof, has a discretion in refusing an application to amend such defective petition.

CRIMINAL LAW: Appeal—Scope of Review. Rulings as to trial
3 jurors in criminal cases will not be reviewed on appeal, when there must be a reversal, irrespective of such rulings; likewise as to rulings as to grand jurors when the reversal does not work a setting aside of the indictment.

CRIMINAL LAW: Belated Objection to Grand Juror. After a grand
4 juror is sworn in, it is too late to interpose the objection that the juror is related to the prosecutrix by consanguinity or affinity within the ninth degree—assuming that such objection is available to the accused.

TRIAL: Exclusion and Separation of Witnesses. The court, on entering
5 an order excluding witnesses from the court room during the trial, does not abuse its discretion by making an exception in the case of the father of an immature prosecutrix.

WITNESSES: Good-Character Witness—Scope of Cross-Examination.
6 A good-character witness may be cross-examined by a series of questions tending to reveal his standard for good moral character. This may be done by asking the witness whether he would consider a person of good moral character if he (the witness) had known that

the party whose character he has supported had been guilty of a specified immoral act.

**EVIDENCE:** Allowable Conclusions. Examination of witness reviewed, and held to reveal no unallowable conclusions.

**APPEAL AND ERROR:** Insufficient Assignment. A brief point which lodges complaint against a ruling by the court, but in no manner indicates where the ruling may be found in the record, is quite insufficient to justify review.

**EVIDENCE:** Handwriting—Signatures for Comparisons. On the issue of the genuineness of a signature, it is error to refuse, in part, an offer of admittedly genuine signatures, for the purpose of comparison with the writing in issue.

**EVIDENCE:** Handwriting—Comparison—Condition Precedent. Proof of the genuineness of handwriting which is offered in evidence for comparison with writings in issue is a condition precedent to the reception of such handwriting; and there is no presumption that one who signed a check also wrote the body of the check.

**TRIAL:** Excluding Books from Jury Room. The court may very properly exclude from the jury room a collateral book, only four pages of which are material, and material only as showing the qualifications of an expert witness.

**EVIDENCE:** Handwriting—Comparisons—Refusal of Writing Made in Presence of Jury. It is not reversible error to refuse to permit a defendant on trial in a criminal case wherein his handwriting was in issue to make or prepare a writing in the presence of the jury for the purpose of comparison with the writing in question, when admittedly genuine writings of the accused were already before the jury.

**EVIDENCE:** Documentary Evidence—Unsigned Writings. Unless it be shown that the party against whom they are offered is *in some manner* responsible therefor, it is reversible error to receive in evidence writings which are (1) unsigned and unaddressed, (2) legally irrelevant and immaterial, and (3) of little probative value in any view, but which may have appeared to the jury to be of prime importance.

**EVIDENCE:** Documentary Evidence—Unsigned and Unaddressed Writings. Unsigned and unaddressed writings, material and relevant to the issue on trial, are admissible when a jury question is presented on the issue whether said writings were written by the one against whom they are offered.

**EVIDENCE:** Relevancy, Competency, and Materiality. On the trial of an indictment for rape, evidence by prosecutrix that she got

certain *unsigned* and *unaddressed* notes (alleged to have been written by defendant) from a certain receptacle which had been agreed on by her and the accused, and other evidence by other members of the family that said notes had been taken from prosecutrix by her mother and delivered to the father of prosecutrix, is incompetent, and its reception is prejudicial error, because tending in itself to induce the jury to believe that defendant did write said notes.

**RAPE:** Corroboration Beyond Reasonable Doubt. Corroboration of prosecutrix in a prosecution for rape must be shown beyond a reasonable doubt. It is reversible error to instruct the jury that corroboration may be found on a preponderance of the evidence.

**CRIMINAL LAW:** Reasonable Doubt "From Evidence." It is reversible error to instruct that a doubt, to be "reasonable," must arise *from the evidence*, as such instruction excludes all reasonable doubts that may arise from the *want* of evidence.

**TRIAL:** Instructions—Correct But Not Explicit. Principle reaffirmed that an instruction is all-sufficient when it is correct but is not as explicit as counsel may desire, and no elaboration is requested.

**TRIAL:** Instructions—Assumption of Fact. A recital to the effect that the court had required the State to elect which particular transaction "developed" by it would be relied upon for a conviction is not an assumption that such transaction has, in fact, been established.

**APPEAL AND ERROR:** Time for Exceptions. An order that defendant may have a stated time in which "to file a motion for new trial and exceptions to instructions" grants defendant the right to file his motion at the stated time and to embrace therein his exceptions to the instructions.

**APPEAL AND ERROR:** Indefinite Assignment. An assignment to the effect that "the court erred in overruling the motion in arrest of judgment and for new trial" is fatally indefinite, when the motion is based on 13 distinct grounds, with many subdivisions.

**APPEAL AND ERROR:** Scope of Review. Misconduct of jurors will not be reviewed on appeal when there must be a reversal irrespective of such misconduct.

*Appeal from Marion District Court.*—LORIN N. HAYS, Judge.

NOVEMBER 26, 1920.

REHEARING DENIED OCTOBER 1, 1921.

CONVICTION on an indictment charging rape. Defendant appeals.—*Reversed and remanded.*

*J. O. Watson* and *L. D. Teter,* for appellant.

*H. M. Havner,* Attorney General, *F. C. Davidson,* Special Counsel, *N. D. Shinn,* County Attorney, and *W. H. Lyon,* for appellee.

SALINGER, J.—I. Whether the petition for a change of venue was, in fact, meritorious is not a question before us. The best sustained application for such change must be overruled

1. CRIMINAL LAW: affidavits *in re* change of venue.

if it be not supported by affidavit, as the statute requires. Some affidavits were withdrawn. The court overruled the application, and declared in connection therewith: "As to the statutory grounds, I do not think the necessary affidavits now remain." This recital or statement to the effect that there had been enough withdrawals to reduce the affidavits below the required number is presumed to state the truth. *Bales v. Murray,* 181 Iowa 649. With less than the required number of affidavits attached, it became the duty of the court to overrule the petition. True, after the same had been overruled, there was a request for permission to "put on some more proof," and an offer to call witnesses to show prejudice and passion. The trial judge denied this application, and expressed himself as of opinion that the grounds for change of venue must be established by affidavit. We are not required to

2. CRIMINAL LAW: change of venue: amendment to petition.

pass upon this ruling, because no exception was taken thereto. Following this, defendant offered to attach "other signatures and additional signatures for a change of venue," to attach "three additional signatures to the affidavit, or to attach three additional affidavits to said petition, and to amend said petition by so doing." The court declined to permit this, and placed it on the ground that it had already ruled on the motion. To say the least, the court had a discretion as to permitting said amendment after the motion had been overruled. We are unable to hold that this discretion was abused.

II. Many complaints are made of rulings on challenges

interposed to grand jurors and to trial jurors. Ordinarily, the question of whether such rulings were right is a moot one, where

3. CRIMINAL
LAW: appeal:
scope of review.

there must be a new trial without reference to those rulings; for, unless the reversal sets aside the indictment, there will be no grand jurors to challenge after remand, and so the question of whether challenges to grand jurors were rightly ruled on is academic. And it is quite unlikely that, on retrial, any juror who served on the first trial will be permitted to sit on the second; so that, as said, ordinarily we would have here nothing but moot questions. In such cases, anything we said would be merely a general guide for the future, and our reports are filled with such guides now.

But it is urged that for error in ruling upon challenge to one member of the grand jury, the indictment should have been quashed or set aside. Of course, that makes the propriety of

4. CRIMINAL
LAW: belated
objection to
grand juror.

the ruling on the challenge a live question. By his challenge, the defendant asserted, in effect, that one member of the panel was related to prosecutrix by consanguinity or affinity within the ninth degree. The objection was not made until after the grand jury had been sworn. We think it is sufficiently shown that the attorney for defendant had no knowledge of this relationship until he learned of it two or three days after the cause had been submitted to the grand jury, and that even then he was not correctly advised as to the exact nature of the relationship. We may assume that, when counsel examined this grand juror, there was not elicited the fact that any relationship existed; that counsel was misled by the answers of the juror, even if innocently made; that counsel believed from this examination that none of the panel had any acquaintance with the father of prosecutrix; and that, if counsel had known this relationship, he would have challenged the juror before the grand jury was sworn. The State contends that Section 5243 of the Code recognizes no ground of challenge to an individual grand juror except for his being prosecutor, or because he has formed or expressed such opinion as would prevent him from rendering a true verdict. The statute does say that the challenge by defendant is allowed for these reasons only. However, it provides also that (1) challenge may be made by the State or the de-

fendant that the grand juror does not possess the qualifications required by law; (2) that certain enumerated challenges may be made by the State only. Then follows the said provision as to what the defendant may challenge for. The statute as a whole seems to leave it in doubt whether the limitation as to said challenge by the defendant narrows the grounds upon which the defendant may interpose challenge, or is a privilege by which he 'alone is permitted to interpose the said two challenges. But the State contends further that challenges to an individual grand juror must be made before the grand jury is sworn. If that is so, we need not decide whether the challenge proceeded on permitted grounds. Appellant asserts that, by reason of certain statutes and decisions, his challenge was made in time.

Section 3688 of the Code defines and specifies what shall be a challenge for cause, and deals with trial jurors only. Though it speaks of objection "to a juror," this general language is limited by the context and statutes *in pari materia.* Code Section 5360 once more deals with challenges for cause, says they may be made either by the State or defendant, and that they must be made for enumerated causes; and once more, despite this general introduction, seems quite clearly to deal with trial jurors. And unlike Section 5243, it has nothing to say as to the time at which the challenge must be interposed. Code Section 5319 deals with the grounds for setting aside an indictment on motion. One ground is, "That the grand jury were not selected, drawn, summoned, impaneled or sworn as prescribed by law." We find nothing in *State v. Gillick,* 7 Iowa 287, that bears on the point under consideration. And so of *State v. Pickett,* 103 Iowa 714, relied on by the State. And it seems to deal with trial jurors only.

On finding that Section 4261 of the then existing Code (Code of 1873), which gives the right to challenge a grand juror on the ground of opinions formed and expressed of his guilt, *does not prescribe the time within which the right shall be exercised,* it is held, in *State v. Osborne,* 61 Iowa 330, that the prisoner, upon information received, ought to be permitted to challenge the grand jurors at any time before they consider the case; that they are lawfully subject to challenge on account

of matters arising after a prior challenge has been made. It was accordingly held that, where an indictment was set aside as a nullity on account of illegality, the grand jurors who found the indictment are subject to challenge on the ground that, in the finding of the illegal indictment, they have formed and expressed an opinion as to the guilt of the prisoner; and that it was error to deny the right of challenge and to resubmit the case to the same grand jurors, over objection. All we find in *State v. Bullard,* 127 Iowa 168, is that, on resubmission of a charge to a grand jury after an indictment has been set aside, if it appears from an examination of the jurors that several were members of the jury which returned the original indictment, and they state they had formed and expressed an opinion as to the guilt of the defendant, and retain it, and say that, if the same evidence was again presented, they would return an indictment, and if called as petit jurors they would vote to convict on the same evidence, such jurors are incompetent, under Code Section 5243, although they also state that they have no prejudice or bias against the accused, and that their opinions would not prevent them from giving an impartial consideration of the evidence and rendering a true finding thereon.

On the other hand, Section 5243, Code, 1897, stating the grounds of challenges, says they "may be made before the grand jury is sworn." Speaking to a challenge that grand jurors had been selected from newly created precincts, in which no general election had ever been held, we said, in *State v. Pierce,* 90 Iowa 506, that it has been repeatedly held a defendant held to answer has an opportunity to challenge the grand jury before it is sworn, and if he fail to do so, he cannot afterwards make the objection. We held, in *State v. Gibbs,* 39 Iowa 318, that right to challenge a grand juror on the ground that he is an alien must be exercised before the jury is sworn, and, failing to avail himself of it then, defendant cannot afterwards urge the objection.

We are of opinion the challenge here came too late.

III. At 9 o'clock in the forenoon of February 24th, a rule was asked and granted, requiring the separation of witnesses during the taking of testimony. Thereafter, prosecutrix was duly sworn. Before the examination was proceeded with,

**5. TRIAL: exclusion and separation of witnesses.** defendant insisted on the enforcement of this rule as to the father of prosecutrix, saying that the probability was they would want to use Mr. Barnes again:

"Court: The court will not do that. He is a necessary party here. He will be allowed to remain in during this trial. Counsel: Please note the objection of the defendant. Court: Neither Mr. Barnes nor the defendant will be sent out during the trial. Mr. Barnes has a right in here always."

Defendant excepted. Still later, when the prosecutrix was called, defendant objected to Mr. Barnes's remaining in 'the court room during her examination.

"Court: The court has already ruled that he would be permitted to remain in the room, as an aid to counsel conducting this case."

Defendant excepted. The State defends the ruling with what it claims for *Crull v. Louisa County,* 169 Iowa 199. That case holds that exclusions from the court room are peculiarly within discretion. Appellant relies upon 14 Encyc. of Evidence 592, 593, 594, to the effect that, when a rule is granted for the separation of witnesses, it should not be suspended in favor of witnesses for the State. Of course, that is true, as a general proposition. The question here is whether it was beyond the discretion of the court to permit the father of this young prosecutrix to remain in the room, say, as an aid to counsel while this witness was being examined. We hold no abuse of discretion is made to appear.

IV. On cross-examination of witnesses who had testified for the character of defendant, the following was, over apt objection, permitted:

**6. WITNESSES: good-character witness: scope of cross-examination.** "Q. Would you say any man who would voluntarily have intercourse with a girl under 15 years of age would have a good moral character? A. I would say he would not. Q. If, as a matter of fact, you knew and had known it to be a fact, prior to the 12th of January of this year, that a man had sexual relations with a girl under 15, you would not then say that he was a man of good moral character, would you? A. No. Q.

What would you say as to the morality or immorality of a man past 40 who would voluntarily have sexual intercourse with a girl under 15 years of age? A. Immoral.''

These rulings are approved. See *State v. Rowell,* 172 Iowa 208, 214; 40 Cyc. 2496, 2497; *Basye v. State,* 45 Neb. 261; *Annis v. People,* 13 Mich. 511.

V. Complaint is made of the examination following:

"I was sitting in the chair first, and slid down the chair something like this, only down further. Q. And what was your sister, Anna, doing at this time? A. I think she was in the bedroom, reading. (Objected to as incompetent for being a conclusion and opinion. Overruled. Defendant excepts.) Q. And you could have heard her coming, had she started towards you? A. Yes. (Objected to as an opinion and conclusion.)

7. EVIDENCE: allowable conclusions.

"Court: Yes, I think so.

"Counsel for defendant: We move to exclude it. (No ruling. Defendant excepts.)

"Q. Now, what assurance did you have that your grandmother or your sister would not find you in this act? (Objected to as immaterial, incompetent, and an opinion and conclusion. Overruled. Defendant excepts.) A. Well, I didn't know whether they would or not. I thought if they could come, I could hear them. (Defendant moves to exclude as a conclusion and opinion, and as incompetent. Overruled. Defendant excepts.) Q. What was your grandmother's condition as to any reason why she was not liable to come in? (Objected to as incompetent, a conclusion and opinion. Overruled. Defendant excepts.) A. Well she might come in for a paper or anything; but I never thought she would, and she didn't. Q. What about your grandmother's habits of being asleep, or awake, or sitting down, etc.? (Objected to as immaterial, not redirect, and as calling for an opinion and conclusion. Overruled. Defendant excepts.) A. If she was reading, if she started to read, she would go to sleep, most of the time. (Move to exclude the answer as an opinion and conclusion. Overruled. Defendant excepts.)

"Q. What happened, Mrs. Barnes? (Objected to as a conclusion from the noise she made.)

"Court: No, she knows. She says she went out of her room and in there and closed the door. (Exception.)

"Q. What happened as soon as she locked the door? A. She went to the bathroom window and raised it. I didn't see defendant.

"Counsel for defendant: Move to exclude all the testimony of the witness in reference to this matter, because it now appears defendant was not about. Overruled. Defendant excepts."

None of the foregoing rulings exhibit any reversible error.

VI. We are told in the errors relied on for reversal that the court erred in limiting comparison of writings to a comparison with a specified signature made by prosecutrix, and in

8. APPEAL AND ERROR: insufficient assignment.

declining to admit certain of her other signatures. It may be conceded the brief points tell us why this would be erroneous, if done. But no reference is given to any place in the record where it may be found that said alleged arbitrary limitation was indulged in. We cannot consider this assignment. See *Wheeler v. Schilder*, 183 Iowa 623.

### 6-a

Appellant offered Exhibits A, B, C, and D, signatures of prosecutrix to minutes of evidence of indictment, for the purpose of comparison with the handwriting in Exhibits 4 and 5;

9. EVIDENCE: handwriting: signatures for comparisons.

but the court admitted Exhibit A only. This was error. See 6 Encyclopedia of Evidence 435. In *Mutual Life Ins. Co. v. Suiter*, 131 N. Y. 557 (29 N. E. 822), it was held to be error where the trial court admitted only one and excluded three genuine signatures.

### 6-b

A bundle of 60 checks was offered by defendant. The State, while contending that these checks were immaterial, incompetent, and irrelevant, said no objection would be made,

10. EVIDENCE: handwriting: comparison: condition precedent.

so far as the signature was concerned. On inquiry, counsel for defendant stated that the checks were offered, not only as to the signature, but further to identify the handwriting of defendant. The court limited the effect of the testimony to bearing upon identifying the signature of defendant; and this ruling is complained of.

It is asserted that Section 4620 of the Code makes this limitation by the court an erroneous one. That statute but provides that:

"Evidence respecting handwriting may be given by experts, by comparison, or by comparison by the jury with writings of the same person which are proved to be genuine."

It seems to be conceded that the signature to said checks was that of the defendant, but we find nothing in the record showing that all the writing on the checks was his. It is not unknown to have the writing in the body of a check done by one person, while the signature is appended by the drawer. It will be time enough to determine whether the limitation on part of the court was erroneous when it shall appear that the limitation excluded writing done by the defendant.

6-c

It seems to be conceded that, for the purpose of testing the qualifications of a witness who had said that, in his judgment, certain writings were all done by the same person, it was proper to bring before the jury four pages of a deed record of the county. The court limited the scope of these pages to assisting the jury in determining the qualifications of the witness to distinguish or determine handwriting. Appellant says these pages are "ancient documents," and contain the same common peculiar characteristics which Mr. Wright found in Exhibits 11 and 12 and in other exhibits, and the use of said pages should not have been limited, as was done by the court, and they should have gone to the jury with the other exhibits. The specific complaint seems to be that the evidence was thus limited. We hold that these pages of this record book were receivable for that narrow purpose only. Another exception complains of a refusal to allow these pages to be taken by the jury to the jury room. They were but four pages of an entire volume. The court may have felt that taking the book to the jury room might invite examination and consideration of other parts of the book, with which the jury had no concern. On the whole, we conclude that, if this ruling were error, it is insufficiently grave to justify a reversal.

*11. TRIAL: excluding books from jury room.*

VII. Counsel for defendant asked the latter to take a piece of paper and a pencil and do some writing in the presence

of the court. An objection by the State that any sample of

12. EVIDENCE: handwriting: comparisons: refusal of writing made in presence of jury.

handwriting being made here was immaterial, incompetent, irrelevant, and self-serving was, under exception, sustained. And like objections were sustained to an offer that defendant would occupy any table suggested by the court or counsel for the State, and take any writing material or paper given by the clerk of the court, and take pen and pencil and write anything dictated by counsel for either party,—all for the purpose of comparison of handwriting.

The briefs and such independent investigation as we have been able to make throw no real light upon the point. The case of *Haynie v. State*, 2 Tex. App. 168, is, in effect, a holding that, if an admission as to writing, got by duress and while in custody, is the only basis a witness has for saying he is acquainted with the writing of the prisoner, such witness is not shown to be competent to speak to the point. To like effect is *Regina v. Crouch*, 4 Cox C. C. 163. It can be inferred from *Reid v. State*, 20 Ga. 681, that it is a material consideration whether accused had a motive for disguising his handwriting. In 22 Corpus Juris 629, 630, it is said:

"While it has been held that the mere fact that the witness acquired his knowledge of the person's handwriting after the controversy arose goes to the weight, and not to the competency, of his evidence, there is considerable authority for the view that it must affirmatively appear that the knowledge or standard of comparison was acquired before any dispute arose. * * * Nonexpert witnesses who have acquired their knowledge of the handwriting of the person whose signature is disputed, for the express purpose of enabling them to testify, are usually held incompetent, although it has been considered that the mere fact that the witness induced the party to write for the purpose of obtaining a knowledge of his handwriting will not render him incompetent, where the writer had no motive for disguising the handwriting."

Defendant relies upon *State v. Farrington*, 90 Iowa 673, 679. What we find in it is: (a) Where, near the time of the commission of an alleged forgery, defendant stopped at a hotel, and the landlord saw him write his name on the register, this

signature may be used as a standard of comparison.  (b) Preceding the commencement of the trial, defendant filed a motion for continuance, purporting to be signed by him.  The State offered the ·signature to this motion in evidence, and as a standard for comparison.  It was admitted; and was used as such standard.  We approved this, and said that, while the statute absolutely requires that the genuineness of the standard writing must be established, it makes no provision as to how it shall be done; and that, this paper being filed for a legitimate purpose, deemed by defendant to be necessary or desirable, the signature purporting to be signed is thus sufficiently qualified to be a standard.  We are not agreed, but some of the members are inclined to hold that the request of the defendant should have been granted; that, while it is true such test might be made self-serving, and the writing done in the court room be made purposely unlike the handwriting of defendant, that would seem to be matter that goes to the weight, rather than the admissibility; that defendant knew the jury had signatures by him confessed to be genuine; and that, while on one hand he had a motive for at this time disguising his writing, he might be deterred by the fear that it would be detected, because of admittedly genuine and true handwriting that the jury had, and that the disguising would tell against him with the jury.  This need not be settled now, because the denial of the application is not. reversible.  As the jury had the genuine writings of defendant, refusal to let him furnish another sample was, at most, a refusal to receive what was already adduced.  If he proposed to furnish a spurious sample, it was not error to stop his doing so.  If he proposed to submit a true sample, the jury already had such.

VIII.  Complaint is made of receiving testimony as to Exhibits 4 and 5.  These are two notes in the writing of prosecutrix.  The testimony in, question is this:

13. EVIDENCE: documentary evidence: unsigned writings.

"Prosecutrix:  Exhibit 4 is a note I wrote, and I put it in my father's pocket.  Q.  How did you happen to do that?  (Objected to as immaterial, self-serving, and not in any way binding on defendant, incompetent, and irrelevant.  Overruled.  Defendant excepts.)  A.  I went to put it in defendant's pocket,

and father's coat was hanging there, and I put it into father's pocket (by mistake). The coats were pretty near alike. (Defendant moves to exclude the answer 'for the reason urged'. Overruled. Defendant excepts.) Q. If you know, tell us what Exhibit 5 is. To whom did you write those two notes? (Objected to because it is immaterial, self-serving, incompetent, irrelevant, and in no way binding on defendant. Overruled. Defendant excepts.)''

She said further that Exhibit 5 is a note she wrote to appellant, which she intended to put into a tile block in the barn, and that her mother took it from her. M. A. Barnes testified that, on January 3d, the last day defendant worked for witness, defendant wore a corduroy coat. Witness wore one also, and they were similar. One was hanging over the coat on a hook.

''Q. Did you find any notes in writing in your pocket, that day when you took your coat? (Objected to as immaterial. No ruling. Defendant excepts.) A. No, sir. Q. Did you at any time following that? A. The next morning.· (Defendant objects that the question is immaterial, and moves to exclude the answer. Overruled. Defendant excepts.) Q. Look at Exhibit 4, and state whether or not that is one of the notes you found in your pocket. (Defendant objects as immaterial.) Counsel for the State: We have not offered them in evidence yet. (No ruling. Defendant excepts.) A. Yes, sir.''

Exhibit 5 is one of the notes witness found. The notes were found on January 4th. On January 13th, defendant was riding with witness, and he asked him about these notes. He said he didn't hurt the girl, and would not harm her.

When the State offered Exhibits 4 and 5, defendant objected that the same are immaterial, incompetent, and irrelevant, because there is no showing connecting the same with defendant; they are self-serving and do not bind defendant; there is no showing they ever reached him, or that he ever knew of their existence; they are not signed nor addressed to anyone; there is no showing they left the family of prosecutrix; and the evidence shows conclusively they were never received by defendant. While ruling was reserved at this point, under exception, the objections were finally overruled, under due exception.

The State argues that, while technically the admission of

Exhibits 4 and 5 was improper, there is nothing in the notes which has any importance in the case. Appellant insists that their admission was prejudicial. The exhibits read:

Exhibit 4. "I would write more but I am afraid of being caught at writing and that would never do for it would give trouble to get caught at writing. Willie has been making me mad."

Exhibit 5. "If you do write don't write more than one page."

Perhaps the State is right in saying that these notes "were of no importance in themselves, and that they did not tend in any degree to connect defendant with the crime." Appellant agreed they did not so tend. If they did not, the objections that they were immaterial and irrelevant should have been sustained. And it should be added that, if these letters had, in fact, little probative value, the jury may well have thought otherwise. The State urges further that, while these notes did not reach the defendant, they were called to his attention, and it refers to its amended abstract on page 4. We cannot find any such testimony on that page or elsewhere in said abstract.

In 16 Corpus Juris 742, Section 1525, the rule is stated to be that "proof of actual receipt by the addressee is necessary to the admissibility against accused of a letter written to him." In *State v. Dudley*, 147 Iowa 645, this court affirmed a refusal to permit defendant to show that, prior to the alleged crime, prosecutrix had in her possession a note, addressed to no one and unsigned, which said the writer would meet the girl "tonight and have connection." The objection urged was that it was immaterial and incompetent. In the case at bar, these objections were made, and specific ones as well, and defendant denies ever receiving any notes from prosecutrix.

These notes should not have been received.

IX. It is assigned the court erred in receiving testimony of prosecutrix and members of her family touching Exhibits 11 and 12, two unaddressed and unsigned notes, asserted to be in

14. EVIDENCE: documentary evidence: unsigned and unaddressed writings.

the writing of defendant. This testimony was, in effect, a statement by prosecutrix that she got these letters in the tile block in the barn which, according to her, was "mentioned by

her'' and appellant as a receptacle wherein to put notes, and there is testimony that the mother took these papers from prosecutrix; also, that the mother gave these to the father. We are of opinion that this testimony was properly received. It helped the jury believe that defendant wrote the letters.

Was it error to receive the letters themselves? True, appellant denies writing them, denies he had any knowledge of them, or that he made any arrangement for putting notes into a tile. But Wright and Roberts testified, as experts, that the writing in these exhibits is the same as the admitted signature of the appellant on the back of certain checks. Three other experts testified that the writing was not the same. On analysis, here is not the question whether unaddressed and unsigned letters may be used against whoever may be claimed to be the writer, though they are not signed or addressed. But what is urged is that the preponderance of the evidence shows that these exhibits were not in the handwriting of the defendant. The exact claim is shown in a motion to strike the exhibits. It asserts that defendant has at this time testified positively in denial of writing both of said exhibits; that the testimony of Roberts and Wright cannot overthrow this direct testimony; that the value of the expert testimony is wholly destroyed by this direct and positive denial, and by the testimony of the handwriting experts put in by the defendant. This contention goes, not to the admissibility, but to the weight that should be given Exhibits 11 and 12. Though unsigned and unaddressed, if the jury could find they were in the writing of the defendant (22 Corpus Juris 630), and that they tended by their contents to prove the crime charged, the letters were admissible, though they were neither signed nor addressed. And appellant, at least, is in no position to say that they were immaterial and irrelevant for the reason that the contents had no tendency to prove the crime charged; for, in effect, he complains elsewhere that their contents were harmful, because corroborative. He does not say these were no element of corroboration, but that it was error to let the jury find them to be corroborative on a mere preponderance.

Though the experts clashed, the testimony of one set sent these letters to the jury. No matter if erroneously received

15. EVIDENCE: relevancy, competency, and materiality.

testimony helped the jury conclude that defendant was the author, the handwriting testimony alone would still·send the question of authorship to the jury. While the introduction of the improper testimony was error, it is not error to send to the jury on sufficient, competent evidence, even if it be aided by incompetent.

X. In Instruction 9, it was correctly charged that there could be no conviction without corroboration; correctly stated what corroboration is, and that mere opportunity to have committed the crime is not sufficient corroboration. But the court added that opportunity is a sufficient corroboration, if the jury further found

16. RAPE: corroboration beyond reasonable doubt.

from the evidence "and to your satisfaction that such opportunity was sought and brought about for the purpose of the commission of the offense." This does not say, in terms, that corroboration must be established beyond reasonable doubt, but is a statement that same may be established by evidence which is to the "satisfaction" of the jury.

In Instruction 10, the jury was told that the State has offered Exhibits 11 and 12 as being corroborative of the testimony of the prosecutrix, and that:

"In order for said exhibits to be considered by you as corroborative of the prosecuting witness's testimony, it will be necessary for the State to have shown by a preponderance of the testimony that said exhibits are in the handwriting of the defendant, or that they were delivered to the prosecuting witness by the defendant, or that they were placed by the defendant in a box or place agreed upon between the defendant and the prosecuting witness, in which the correspondence between said parties was to be placed and was to be received therefrom by said parties respectively," and that, unless "the State has established by a preponderance of the testimony one or more of said conditions in reference to said exhibits, then you are instructed that it is not entitled to your consideration, and you should wholly disregard it."

Next is charged that, if the jury believes "from the testimony, and from a fair preponderance thereof, that the State has shown either of [the matters before stated] * * * then, in such case, if you so find the facts to be, you will be entitled

to consider the said exhibits in evidence, and as corroborative of the testimony of said prosecuting witness.''

This instruction tells the jury, in the plainest and clearest of terms, that they may find the testimony of the prosecutrix has been corroborated if the corroboration has been established ''by a preponderance'' or by ''a fair preponderance of the testimony.'' That is not the law. The corroborative evidence is precisely as essential as the primary evidence, and both must be established, not by a preponderance, or even a fair preponderance, but beyond reasonable doubt. That this was error is not seriously disputed. And what is relied on is, in effect, an avoidance. That avoidance is that, because of other parts of the charge, the case falls within the rule of *State v. Bosch,* 172 Iowa 88, 95, that inexact statements may well be overlooked, where the jury could not have been misled. But is here a mere lack of exactness in statement, and of a character not likely to mislead? In two instructions, the jury was plainly told that a preponderance would suffice to establish the corroboration. How can it be said this was cured by a general instruction (8) that there could not be a conviction unless the acts alleged in the indictment were established beyond reasonable doubt, and by saying, in Instruction 10:

''You, however, are the judges of the sufficiency of the corroborative evidence, when all taken together, as to whether or not it sufficiently connects the defendant with the commission of the offense charged, beyond a reasonable doubt.''

Where did this plainly or at all cure the plain error? All that these told was that no conviction could be had unless the whole of the evidence established the accusation beyond reasonable doubt; but that the evidence might make proof beyond reasonable doubt though corroboration was established by a preponderance only. The ultimate standard was correctly fixed, but how to say whether the proof met such standard was erroneously stated. Even as to only a link in the chain of proof in a criminal case attempted to be proved by a comparison of writing, it has been held that the standard of comparison must be established beyond reasonable doubt to be the genuine writing of the defendant. 6 Encyclopedia of Evidence 432. Surely, as much must be said of the standard of proof demanded to estab-

lish corroboration.  All held in *State v. Cohen,* 108 Iowa 208, is that, while it was unnecessary that each essential link in the chain of corroborative testimony, when separately considered, should be found beyond reasonable doubt, if conviction depends entirely on different circumstances, arranged linkwise, then each and every link must be established beyond reasonable doubt. This surely does not sustain a claim that the whole element of corroboration may be established on less than evidence that satisfies beyond a reasonable doubt.  The case would be quite controlling if corroboration were merely a single link in a chain, instead of a vital supplement to the testimony that establishes the body of the case.  And the most that may be claimed for *State v. Hayden,* 45 Iowa 11, is that it is, in effect, like the *Cohen* case.  The one case that demands some special consideration on this head is *State v. Rivers,* 124 Iowa 17, 21.  There a part of an instruction was this:

"If you find from the evidence, beyond a reasonable doubt, that said note is a forged instrument, and you further find from the evidence, beyond a reasonable doubt, that the defendant uttered said note, and published same as true, knowing that same was false or forged, with intent to defraud, then he is guilty of the crime of uttering a forged instrument, as charged in the indictment; but if you fail to find from the preponderance of the evidence either that said instrument was a forged instrument, or that the defendant uttered and published said note as true, knowing the same to be false or forged, with intent to defraud, then you should find the defendant not guilty."

If this indeed holds that corroboration can be sufficiently established by a mere fair preponderance, we should be constrained to overrule it.  But we doubt whether it is any such holding.  The instruction did tell the jury that, if the elements of the crime be proved beyond reasonable doubt, it should convict.  But unlike here, it was not told that any one essential element in the proof could be established by a mere preponderance.  As the case itself points out, while the jury was told to acquit if it failed to find any one essential element was established by as much as a preponderance, it was not told to convict if such element was found established by a preponderance.  And the opinion points out that the question arises what was to be

done with defendant if the jury failed to find beyond a reasonable doubt that the instrument was forged and uttered with intent to defraud, and yet so found from a preponderance of the evidence; and says that "certainly they were not, in that event, told to convict." These instructions were erroneous.

XI. There was a charge as follows:

"As applied to evidence in criminal cases, reasonable doubt means an actual and substantial doubt, growing out of the unsatisfactory nature of the evidence in the case, and does not mean a doubt which arises from mere whim or vagary, or from any groundless surmise or guess."

17. CRIMINAL LAW: reasonable doubt "from evidence."

This instruction is complained of. It fairly states that a doubt, to be reasonable, must, for one thing, be caused by the evidence adduced. We cannot approve this.

"As a general rule, an instruction that a reasonable doubt must be one suggested by, or arising out of, the evidence adduced is erroneous, as it excludes all reasonable doubts that may arise from the lack or want of evidence." 16 Corpus Juris 997, Section 2411.

XII. Appellant urges that not only is it true that, where the State elects upon which alleged act it will rely for a conviction, it can have no conviction on any other, but that the jury should be (and was not) instructed specifically to that effect. The State contends such limitation was made. In effect, what is complained of

18. TRIAL: instructions: correct but not explicit.

is lack of specific instruction—paucity. As no instructions were offered, such complaint cannot be entertained.

XIII. There is this recital:

"At the close of the testimony on part of the State, the court sustained a motion requiring the State to elect on which particular act of intercourse developed by the testimony it would rely for a conviction."

19. TRIAL: instructions: assumption of fact.

Appellant contends that this language assumes that the particular act elected upon had been developed by the testimony. We think the objection is hypercritical. Not only does the charge as a whole leave it an open question whether any such act is established, but the language itself, reasonably interpreted, is a description of the elec-

tion that had been ordered. It was the equivalent of describing the motion as being one which asked the State to say what particular act charged was claimed by the State to have been so developed by the testimony as that the State would rely on that one act for a conviction.

XIV. The State insists that defendant failed to except to the instructions within the time required by statute. Its claim is that, while extended time was given wherein to file motion for

20. APPEAL AND
ERROR: time
for exceptions.

new trial, this does not carry with it an extension of time in which to take exceptions to instructions; and that, therefore, the exceptions were taken too late. It is true that the exceptions must be made within the time provided by Chapter 24, Acts of the Thirty-seventh General Assembly. See *Haman v. Preston*, 186 Iowa 1292. The order of the court was this:

"The defendant is given until Saturday morning, March 6, 1920, to file a motion for a new trial and exceptions to instruction."

Under this act of assembly, the exceptions may be embodied in a motion for new trial, filed within five days after verdict, "or within such further time as the court may allow." The motion contained the exceptions, the motion was filed within "the time allowed," and therefore the exceptions were timely.

XV. There was a general motion to direct verdict on the ground that the evidence is insufficient to sustain the allegations of the indictment; that there is no sufficient corroboration as to the act charged in the indictment; that a verdict of guilty would have to be set aside on these grounds. There being a reversal in any event, we will, under well-settled rules, not pass upon this point now.

XVI. In the errors relied on for reversal, it is charged the court erred "in overruling appellant's motion in arrest of judgment and for a new trial." The motion for new trial begins

21. APPEAL AND
ERROR: in-
definite
assignment.

on page 128 of the abstract. Its first ground has 11 subdivisions. This is fairly representative of the entire motion, which has 13 distinctly numbered grounds (many, if not most, of them with subdivisions), and the motion as a whole covers 10 of the pages of the abstract. The argument shows that the grounds of the motion

present many distinct points of complaint. The assignment is too general for review.

XVII. But there is one specific assignment on matter involved in the overruling of the motion for new trial. It is based upon the claim that a new trial should have been granted on the testimony of the trial jurors Core, Avery, Bridges, and Jones, to the effect that, during the trial and when not in the jury box, they read an inflammatory newspaper article. This needs no consideration. Where there must be a reversal in any event, alleged misconduct of either counsel or jurors becomes a moot question. As the reversal works a new trial, which will be had before a different jury, and in which counsel may not misconduct themselves, it is idle to inquire whether or not the alleged misconduct is sufficient to obtain a new trial. We pass upon such misconduct only where there must be an affirmance unless it be for such misconduct. We have so held expressly as to misconduct of the jury. See *Davis v. Hansen*, 187 Iowa 583; *Wildeboer v. Petersen*, 187 Iowa 1169. We have so held as to misconduct of counsel. *Whitsett v. Chicago, R. I. & P. R. Co.*, 67 Iowa 150; *International Harv. Co. v. Chicago, M. & St. P. R. Co.*, 186 Iowa 86. This makes it unnecessary to consider either the substantive question or the defensive position that no relief can be had because insufficient objection was made, or made too late.

**22. APPEAL AND ERROR: scope of review.**

There was an application for continuance. Assuming, for the sake of argument, that it should have been sustained, complaint of its overruling presents a moot question. When the case is reached for trial again, ample time will have passed wherein to prepare, and more time can be asked for. New trial being granted, no harm has been done by the refusal to continue.

For the reasons pointed out, the judgment below must be reversed and the cause remanded.—*Reversed and remanded.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.