THE STATE OF IOWA, Appellee v. EMILY W. BRESEE, Appellant.

**Practice of medicine without license:** CRIMINAL LIABILITY: SUBMISSION OF ISSUES. Publicly professing to be a physician and assuming the duties of the profession; prescribing medicines for the sick; and prescribing and furnishing medicines for the sick without a license are separate offenses; and the withdrawal from the jury of the allegation of an indictment that defendant wrongfully assumed the duties of a physician will not render nugatory the charge of unlawfully prescribing and furnishing medicines.

**Same:** EVIDENCE. The evidence in a prosecution for practicing medicine without a certificate of the medical examiners is examined and held to sustain a conviction.

**Instructions:** DEFINITION OF TERMS. Where the allegations of an indictment are stated in words of common and popular use and to which no technical signification is attached, the court is not called upon to explain or define to the jury the meaning of the language used. Under this rule the phrase "make a practice of," as used in the statute prohibiting the practice of medicine without a certificate of the medical examiners, needs no explanation.

**Sufficiency of evidence.** The State is required to prove only so much of the matter alleged in an indictment as is necessary to establish a crime, if the same is included in the charge named; so that although an indictment charges the prescribing and furnishing of medicines for the sick without a certificate, a conviction may be had upon proof of prescribing alone, since the same is an infraction of the statute.

*Appeal from Pottawattamie District Court.*— HON. O. D. WHEELER, Judge.

MONDAY, DECEMBER 16, 1907.

REHEARING DENIED, TUESDAY, MARCH 17, 1908.

THE defendant was indicted upon a charge of prescribing and furnishing medicine for the sick without having first obtained a license or certificate to practice such profession. The jury returned a verdict of guilty, and, from a judgment

VOL. 137 IA.—43

rendered thereon an appeal has been taken to this court.— *Affirmed*.

*E. E. Aylesworth* and *Reed & Robertson*, for appellant.

*H. W. Byers, Attorney General*, and *C. W. Lyon, Assistant Attorney General*, for the State.

WEAVER, C. J.— The statute with a violation of which the appellant is charged provides that any person who shall practice medicine in the State without having first obtained a certificate issued by the board of medical examiners authorizing him to engage in such practice shall be guilty of an indictable misdemeanor. Code, section 2580. The preceding section of the Code lays down the rule that any person shall be deemed to be practicing medicine who publicly professes to be a physician and assumes the duties of that profession, or shall make a practice of prescribing, or prescribing and furnishing, medicine for the sick, or shall publicly profess to cure and heal. The indictment against the appellant charges, not only in general statutory terms that she practiced medicine without a necessary certificate, but that she unlawfully professed to be a physician and assumed the duties of a physician; that she prescribed and furnished medicine for the sick, and publicly professed to cure and heal, for a valuable consideration. It was conceded on the trial that appellant had never had a certificate from the board of medical examiners for the practice of medicine. It was shown and admitted that she maintained an office or place in the city of Council Bluffs, Iowa, where she kept and sold to others a preparation known as " Schuessler's Tissue Food," the use of which was supposed or claimed to be a benefit to the sick, but whether it was sold or used as a medicine or remedy for diseases, or as an article of diet, is a matter upon which the testimony is in some conflict. At the close of the testimony, the court instructed the jury that there was no evi-

dence that appellant did publicly profess to be a physician, or that she assumed the duties of a physician, or that she publicly professed to cure or heal; and that the only question remaining for their consideration was whether during the time covered by the indictment appellant made a practice of prescribing, or prescribing and furnishing, medicine for the sick. The court also instructed the jury that appellant had the right to keep and sell Schuessler's Tissue Food and other proprietary medicines, and, if a customer indicated to her the nature of his complaint, she could rightfully give her opinion what remedy she had therefor, and state her judgment as to which was best, and give gratuitous advice as to their use, but that she would have no right to diagnose a case and determine for the purchaser the character of the remedy he should use.

I. It is argued that to prescribe and furnish medicines is part of the duties of a physician, and, as the court withdrew from the jury the allegation of the indictment that appellant

1. PRACTICE OF
MEDICINE
WITHOUT
A LICENSE:
criminal liabil-
ity: submission
of issues.

wrongfully assumed such duties, the charge that she unlawfully prescribed and furnished medicines necessarily falls with it. We think the reasoning is unsound. The statute, as we

have seen, specifically and separately enumerates each of these acts: (a) Publicly professing to be a physician and assuming the duties of the profession; (b) prescribing medicines for the sick; (c) prescribing and furnishing medicine for the sick, and provides that any person making a practice of either shall be held to be practicing medicine within the meaning of the law. It is quite clear from the statute that the Legislature did not understand that these phrases are merely different expressions of the same idea. Both expressions appear to have been used in order to bring within the scope of the act both the person who professes to be a physician and assumes the duties of that profession and the person who, while not claiming to be a physician, and not assuming the duties of the profession generally, yet undertakes to prescribe and

furnish remedies for the sick and afflicted. There was no error, therefore, of which the defendant can complain in submitting the case to the jury upon the theory that the practice of prescribing, or prescribing and furnishing, medicines for the sick is not necessarily included in the charge of publicly professing to be a physician and assuming the duties pertaining to such profession.

II. Again, the point is made that under the court's instruction as to what acts will amount to prescribing and furnishing medicines, and as to plaintiff's right to sell tissue food, there is no evidence upon which a verdict can be upheld. Upon a careful reading of the record, we find no such lack of testimony in support of the indictment as calls for our interference with the finding of the jury. If the witnesses were to be believed, appellant assured the sick applying to her of her ability to cure them, and professed to be able by merely looking at them to determine the nature of their diseases. Such was her confidence in her skill that she boasted that she had never lost a patient, and declared she would not take any patient whom she could not cure. To those desiring her aid she dealt out what she claimed to be " bio-chemical remedies," or tissue food. On her door she placed a card or sign advertising her business as a " bio-chemist," whatever that may mean. According to her statement, the remedies or tissue food dealt out by her were prepared by a distinguished German scientist, Prof. Schuessler, who is alleged to have discovered that the human system is made up of fourteen different elements or properties, and that with a sufficient tissue food or remedy for the building up of these elements or component parts all diseases would become curable. Twelve of these ultimate elements and their proper tissue food had been discovered by Prof. Schuessler, and, when the other two had been found, " you simply need never die." These remedies she had in tablet form, and her manner of dealing them out is thus described by one of the witnesses, who had applied to her for this

2. SAME: evidence.

valuable secret of earthly immortality: " She said we should come to her because, while the tablets did the work, they should be administered in just such a form. She would take one bottle then another, and, when people were sitting around the table, she would not give them all from the same bottle. She would kind of give them in a certain way. They were tablets. She called them ' tissue food,' I believe. I don't know as I ever heard her call them that, but I suppose she was referring to the remedies — the tissue food and the benefits to be derived were from the use of these remedies taken in just such form as she prescribed. These remedies were in bottles. My father ate them from plates she put them on taking same from particular bottles. I think I asked her once how she could know which to give to the different patients. Her only answer was she said she never got mixed up. I don't know whether the manner in which these remedies were to be administered were upon the bottles or not."

Another witness says: " I live in this city; am acquainted with defendant; have consulted her for my ailments about two years ago last August. I told her what my condition was. She said she thought she could help me. She gave me some tablets, and some paste made from the tablets. The paste was an external application. I took treatment several months, don't remember exactly how long. I think the price was $1 a treatment. My husband paid her. She was paid for the services she rendered me. The number of these tablets she gave me varied; sometimes I took more than at other times. She would give me directions how to take the tablets. I took some of them home. She directed me how to take them." Doubtless some of the testimony above referred to has primary reference to specifications in the indictment which the court 'eliminated from the case, but we think the jury could also properly give it some weight in determining whether appellant did or did not undertake to prescribe and furnish medicine to the sick within the meaning of the indictment as explained by the court in its instructions. Those

instructions were to the effect that, if the accused after diagnosing a case undertook to determine for a sick person applying to her the character of the remedy best suited to his ailment, said act would be prescribing medicine for the sick within the meaning of the statute. We are of the opinion that this definition is correct as far as it goes, and, if it be not as full, exact, and complete as might be framed, the error is one of which the defendant cannot be heard to complain. The fact that the appellant was careful to call the article which she supplied to the sick " food," instead of " medicine," is not at all decisive of the merits of the case. It is evident she was catering to the patronage of the sick who were asking relief from their ills, and, if she listened to their statements, assured them of her ability to help them, and supplied them with her alleged appropriate remedies giving instructions for their application or use, this would seem to come within the definition given by the court, as well as within the ordinary and usual signification attached to the words " prescribing " or " prescribing and furnishing medicines," as they are commonly used and understood. Medicine as defined by Webster is " any substance administered in the treatment of disease; a remedial agent; a remedy." The fact that the substance so employed as a remedial agent may have value as a food, and have a tendency to build up and restore wasted or diseased tissue, will not deprive it of its character as a medicine if it be administered and employed for that purpose.

III. Error is assigned upon the failure of the court to define to the jury the words " make a practice of," as used in the statute under the provisions of which this prosecution 3. INSTRUCTIONS: was begun. It is said that defendant could definition of terms. be convicted only upon the showing that she made a practice of prescribing and furnishing medicines for the sick, and that it was the duty of the court even without request to define that phrase. Under the record before us, we think the point thus made is not well taken.

It is proper, and under some circumstances necessary, for the court to carefully define and explain to the jury the meaning of words and phrases used in an indictment. This is especially true if the pleader in framing the indictment has employed words which are obscure or ambiguous, or are used in some restricted, special or technical sense which the average layman cannot be expected to understand. By our statute (Code, sections 5280 and 5287) it is provided that, when an indictment undertakes to state the facts constituting the offense charged, the statement must be in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended; also, that the words used in the indictment must be construed in their usual acceptation in common language, except words and phrases defined by law which are to be construed according to their legal meaning. Generally speaking, where this statutory admonition has been observed, and the matters charged against the accused are stated in ordinary language and in such manner as to enable a person of ordinary understanding to know what is charged, it is not necessary for the court to enter upon a definition or explanation to the jury, which is made up of men who are supposed to be of ordinary intelligence and understanding and capable of comprehending the meaning of the terms so employed. See *Henderson v. People,* 124 Ill. 607 (17 N. E. 68, 7 Am. St. Rep. 391); *State v. Cantlin,* 118 Mo. 100 (23 S. W. 1091); *Humphreys v. State,* 34 Tex. Cr. R. 434 (30 S. W. 1066); *State v. Harkins,* 100 Mo. 666 (13 S. W. 830); *Giskie v. State,* 71 Wis. 612 (38 N. W. 334).

In the case last cited, defendant being on trial for murder in the second degree, the court read to the jury the statutory definition of the crime, and said to them that the language was so plain, simple, and intelligible as to be understood by them as well as by any lawyer, and that the case on trial presented simply a question for them to determine whether or not the facts proved, if any, came within such

definition.   The failure of the court to take each separate word and phrase of the statute and define the same to the jury was held not to be error.   The opinion here cited goes farther than it is necessary for us to go in the present case, and we do not wish to be understood as adopting its language as being applicable to criminal charges generally, but it is entirely sound as applied to all indictments in which the allegations are stated in words in common popular use, and to which no technical signification is attached.   In *Henderson v. People, supra,* the defendant was indicted upon the charge of having enticed an unmarried girl of previous chaste life from her parent's home for the purposes of prostitution, and concubinage.   Being convicted, he appealed from the judgment rendered against him, and among the errors alleged was the failure of the trial court to define and explain these terms.   In overruling this point the court says:   " The record shows that the court gave the general charge to the jury on its own motion, and that no other instructions were asked or given.   One of the objections taken to the charge is that the court should have explained to the jury what is meant by the terms ' prostitution ' and ' concubinage ' as they occur in the statute.   The court was not asked to give the explanation of these terms, and there is no reason why it should have done so in the absence of such request.   At any rate, it would be going much further than we are prepared to go to reverse the judgment on that ground.   The words in question are in general use, and we have no doubt that they were used by the Legislature in their general or popular signification. They are in no sense words of art or technical terms, and, if it were apprehended that they would not be correctly understood by the jury, counsel should have prepared an instruction defining the words and submitted it to the court to be ruled upon in the usual way.   It is but a fair presumption that the jury understood the words in the sense in which they are used in the statute, or that they were used by the court in its charge in the same sense."   The language here quoted

is very applicable to the case at bar, and the rule there laid down is so manifestly reasonable that in our judgment it requires no further consideration.

IV.   Defendant's next complaint is that the court's instructions were such as to permit the jury to convict the defendant of prescribing medicines for the sick, while under 4. SUFFICIENCY the .indictment as presented she could not OF EVI-DENCE.  properly be convicted without proof that she both prescribed and furnished medicine for the sick.   It is true the indictment charges the defendant, among other things, with making a practice of " prescribing and furnishing " medicines for the sick, and it is also true that the statute provides that the practice of " prescribing " medicines for the sick shall be held to constitute an infraction of the law in question.   We think, however, that under the most familiar principles of criminal procedure in this State, although the indictment may allege both the prescribing and furnishing, it was still competent for the jury to find the defendant guilty of undertaking to practice medicine by prescribing medicines for the sick without reference to whether she did or did not furnish the medicines so prescribed.   In defending a person charged with assault and battery, counsel would not contend that his client could not properly be convicted under the same information or indictment of simple assault. The language employed in the indictment includes every essential fact necessary to be established in order to convict the defendant of the practice of prescribing medicines for the sick, and, if those facts have sufficient support in the evidence, failure, if any, to prove other facts not necessary to conviction will not entitle the defendant to an acquittal. In other words, the State is bound to prove only so much of the matter alleged as is necessary to establish a crime if the same be included within the charge named in the indictment. Other questions raised in argument are governed by the conclusions we have already announced, and we need not prolong this opinion for their discussion.

We find no reversible error in the record, and the judgment of the district court is therefore *affirmed*.