STATE OF IOWA, Appellee, v. W. F. HUGHEY, Appellant.

No. 39778.

JUNE 24, 1929.

*Welty, Soper & Welty* and *Lee, Steinberg & Walsh,* for appellant.

*John Fletcher,* Attorney-general, *Gerald O. Blake,* Assistant Attorney-general, and *Nichol & Nichol,* for appellee.

EVANS, J.—The indictment charged the defendant with carrying on his unlawful practice in Story County, Iowa. The evidence discloses that, for some time prior to November 23, 1928,  the date of the return of the indictment, the defendant had maintained a room or office for the purpose of receiving patients; that he had advertised himself as a "magnetic healer;" and that he treated many patients for a money consideration. The following is a copy of his professional card:

"Office hours 7 A.M. to 5 P.M., 1607 Grand Avenue, Phone 386 L. W. W. F. Hughey, Magnetic Healer, Ames, Iowa, Chronic and Nervous cases a specialty. Immediate relief in many cases. Call or write for appointment. Examinations Tuesdays and Thursdays only."

The defendant's method of practice may be indicated by a few quotations from the testimony of witnesses:

John Mather testified:

"I am farming in Grant Township, near Ames. I met the defendant six weeks ago; first met him in Ames, Iowa, when he lived on Eighth street; had heard of him. I told him I would like to get a date with him for treatment. He said he could not get a date before February. He finally said he could put some people off who were not so urgent as my case. He just held me by the thumb. That is all he did. Said I had leakage of the heart. I paid him $12 for four treatments. He said the virtue of his treatments was the laying on of the hands. Just the same as sewing it up again. He just laid his hand over my heart. I had 9 treatments. He said I could not expect much relief under 30 days. I took a treatment once a day—each was to be $3.00."

Harry Peters testified:

"I saw the defendant in his office in Ames, Iowa. He had some chairs and a desk. When I went in, there was no one waiting. He told me I had liver trouble and a touch of tuberculosis. Had gravel on the liver; said I had caught cold. He just looked at me. I have been treating with him for 10 weeks. Each treatment took 15 minutes. * * * The treatments consisted of just laying on the hands."

Warren testified:

"About three months ago, I took some treatments of the defendant. I heard the treatments were to be three dollars. I do not know how many I did take. He told me I had heart trouble, liver trouble, stomach trouble, gall bladder trouble, tumor. He just laid his hands on me. The tumor left. Flushed away."

The defendant used no medicine and practiced no surgery. He practiced massage to some extent. At the close of the evidence, the plaintiff moved for a directed verdict, on the ground that there was no evidence that he practiced *medicine*. This motion was overruled. Defendant's contention is renewed here. Detailed objections are made also to instructions given by the court defining the statutory offense of which the defendant was convicted. Preliminary to a discussion of the assignment of errors, it will be convenient to set forth certain of the statutes. Defendant predicates argument upon the distinction between the present statute, Section 2538, Code of 1927, and the statute con-

tained in the Code of 1897, being Section 2579 thereof. Said Section 2579 of the Code of 1897 was as follows:

"Any person shall be held as practicing medicine, surgery or obstetrics, or to be a physician, within the meaning of this chapter, who shall publicly profess to be a physician, surgeon or obstetrician, and assume the duties, or who shall make a practice of prescribing or of prescribing and furnishing medicine for the sick, *or who shall publicly profess to cure or heal.*"

The italics are ours. The amendment consisted of eliminating from the statute the clause above italicized. Section 2538 of the present Code, so far as material for our present purpose, is as follows:

"*Persons engaged in practice of medicine.* For the purpose of this title the following classes of persons shall be deemed to be engaged in the practice of medicine and surgery:

"1. Persons who publicly profess to be physicians or surgeons or who publicly profess to assume the duties incident to the practice of medicine or surgery."

Under the present statute, a mere public profession to cure or heal does not, of itself, constitute a crime. Such public profession, however, may have an evidentiary value, under the provisions of Section 2528, which is as follows:

"2528. *Prima facie evidence of practicing.* The opening of an office or place of business for the practice of any profession for which a license is required by this title, the announcing to the public in any way the intention to practice any such profession, the use of any professional degree or designation, or of any sign, card, circular, device, or advertisement, as a practitioner of any such profession, or as a person skilled in the same, shall be prima-facie evidence of engaging in the practice of such profession."

With the foregoing statutes, and with the excerpts of evidence illustrating the methods of the defendant, we may proceed to a detailed consideration of the assignment of errors.

I. The defendant complains of Instruction 6 given by the court. This instruction is set forth in appellant's brief, and the

points of his attack are indicated by him by italics. Such instruction, thus italicized, was as follows:

"You are instructed that a person shall be deemed to be engaged in the practice of medicine and surgery who publicly professes to assume the duties incident to the practice of medicine and surgery. By 'the duties incident to the practice of medicine and surgery' is meant the holding out of one's self as a physician, and the treating of other persons for the relief or cure of ailments or diseases of the mind or body. The treatment does not necessarily have to be restricted to the giving of medicine, *but may be other and different treatment.* Under the meaning of the law, one who publicly holds himself out to *assume the duties incident to the duties of a physician or surgeon shall be deemed engaged in the practice of medicine*; and before he legally can do so, he must have first obtained a license from the state board of health; and if a person is engaged in the practice of medicine, as herein defined, and has not first obtained a license, he will be guilty of a violation of the law, and will be punished accordingly. So in this case, if you find from the evidence beyond a reasonable doubt that the defendant was engaged in the practice of medicine as herein defined, *prior to the finding of the indictment in this case, to wit, November 23rd, 1928,* then, in that case, he is guilty of the charge in Count One of the indictment, and you should so find by your verdict."

The first objection made to this instruction is that it brings under statutory ban "other and different treatment" than the "giving of medicine." The argument for defendant is that, inasmuch as he gave no medicine, he could not be guilty of practicing medicine. The term "practice of medicine" is defined by Section 2538. It is not confined to the administering of drugs. Under this statute, one who publicly professes to be a physician and induces others to seek his aid as such is practicing medicine. Nor is it requisite that he shall profess in terms to be a *physician.* It is enough, under the statute, if he publicly profess to assume the duties incident to the practice of medicine. What are "duties incident to the practice of medicine?" Manifestly, the first duty of a physician to his patient is to diagnose his ailment. Manifestly, also, a duty follows to prescribe the proper treatment therefor. If, therefore, one publicly profess to be able to diagnose

human ailments, and to prescribe proper treatment therefor, then he is engaged in the practice of medicine, within the definition of Section 2538. It is quite apparent from the record that the State's witnesses had confidence in the defendant, and were friendly to him, though they were used as witnesses against him. The very confidence which he thus engendered in his patrons is a part of the fraud and imposition against which the statute seeks to protect gullible innocence. Gullibility could hardly be described in fewer words or illustrated more picturesquely than it is done by the testimony of the witness Warren:

"He told me I had heart trouble, liver trouble, stomach trouble, gall bladder trouble, tumor. He just laid his hands on me; the tumor left. Flushed away."

Whether, therefore, the defendant was engaged in practicing medicine may be evidenced by "other and different treatment" than the "giving of medicine."

II. The next objection to this instruction is directed to its verbiage, in that the word "duties" was repeated, and used out of place. It is quite self-evident that the word "duties" was  used the second time inadvertently, in lieu of the word "practice," as follows: "Under the meaning of the law, one who publicly holds himself out to assume the duties incident to the practice of a physician," etc. This is the form in which the rule had been stated in the earlier part of the instruction. While, therefore, the use of the word "duties" the second time was a mistake, which tended to obscure the thought of the court and to make its expression somewhat awkward, nevertheless, in the light of the whole instruction, the mistake was evident, and could not have misled the jury.

III. The last objection to this instruction is that the court failed therein to recognize the statute of limitation and the venue of the offense. Two of the State's witnesses, Sawyer and Ogle,  had testified that the defendant had treated them at Pella, and before he came to Ames. The argument is that, under Instruction 6, the jury were permitted to predicate the guilt of the defendant upon the acts committed in Marion County. This argument ignores Instruction 4, expressly instructing the jury that they

could predicate a finding of guilt only upon an offense committed in Story County, and within three years from November 23d, the date of the finding of the indictment.

IV. The witness Ogle testified, without objection, as follows:

"I live at Ames, Iowa. I have known the defendant for two years. I first saw him at Pella, Iowa. I was ailing, and went to see him. I do not know whether you call what he did diagnosing or not. He told me what was the matter with me, and began to treat me. I paid him $3.00 per treatment for 18 treatments. It was sort of a massaging. He used his fingers in the glands for 15 minutes. I knew him as Doctor Hughey."

After the cross-examination of the witness, the defendant moved to strike his evidence as incompetent, immaterial, and irrelevant. The court reserved ruling on the motion. Error is  assigned upon the failure of the court to sustain the same. The assignment is not well taken. The evidence having gone in without objection, the defendant was in no position to demand its exclusion by motion, as a matter of right. The sustaining of the motion rested in the sound discretion of the court. Moreover, the fact that the court reserved ruling on the motion kept the matter open for further consideration. It was open to the defendant in the later progress of the trial to ask for a ruling. Furthermore, the evidence was so similar in its character to that of all the other witnesses as to render it quite nonprejudicial, in our judgment. The practical effect of Instruction 4 was to exclude it from the consideration of the jury. And this is true also of certain evidence of like kind given by the witness Sawyer.

V. In the fourteenth instruction, the court said:

"If, after a careful and impartial consideration of all the evidence in the case, *or lack thereof,* you can say and feel that you have abiding conviction of the guilt of the defendant, and are fully satisfied of the truth of the charge, then you are satisfied beyond a reasonable doubt."

Complaint is directed to that part of the instruction which we have italicized. The complaint is that the court predicated the burden of proof resting upon the State upon a *lack* of evi-

 dence. This feature of the instruction has its justification in our holding in *State v. Smith*, 192 Iowa 218. In *State v. Ritchie*, 196 Iowa 352, we receded somewhat from the distinction emphasized in the *Smith* case, and held that the distinction between the two forms of instruction was "over-refined and shadowy," and that it is not very material whether the expression be used or omitted. The foregoing comprise the principal errors argued.

We find no prejudicial error in the record, and the judgment below is—*Affirmed*.

ALBERT, C. J., and KINDIG, WAGNER, and GRIMM, JJ., concur.