STATE OF IOWA, Appellant, v. ROYAL MILLER, Appellee.

No. 41822.

JUNE 20, 1933.

REHEARING DENIED SEPTEMBER 21, 1933.

John Fletcher, Attorney General, and Gerald O. Blake, Assistant Attorney General, for appellant.

J. E. Williams, for appellee.

MITCHELL, J.—The state of Iowa commenced an action to enjoin one Royal Miller from continuing in the practice of medicine in the state of Iowa without first securing a license to do so. The state alleged that Royal Miller had been and was at the time of the filing of the petition engaged in the practice of medicine and surgery without a license, that he had assumed, and was assuming, the duties of a physician and surgeon, and had been and was diagnosing, prescribing for, and treating diseases, and had assumed other incidental duties common to a physician and surgeon, and that the said Royal Miller was maintaining an office at Clear Lake, Iowa, and had advertised as "Dr. Royal Miller". Royal Miller answered all these allegations by denying each and every one of them. The mat-

ter was submitted to the district court, and the district court denied the injunction.

The sole question in this case to be decided is whether or not the appellee was engaged in the practice of medicine and surgery. The legislature, in section 2538, has set forth who shall be deemed to be engaged in the practice of medicine and surgery, and has said that the following persons shall be deemed to be engaged in the practice of medicine and surgery:

" * * * 1. Persons who publicly profess to be physicians or surgeons or who publicly profess to assume the duties incident to the practice of medicine or surgery.

"2. Persons who prescribe, or prescribe and furnish medicine for human ailments or treat the same by surgery.

"3. Persons who act as representatives of any person in doing any of the things mentioned in this section."

Considering the evidence offered in the case at bar, there is no claim on the part of the state that Royal Miller at any time claimed or professed to be a physician or surgeon. There is no claim on the part of the state, and there is no evidence in the record, that Royal Miller prescribed for any person or furnished medicine for any human ailment, or treated the same by surgery.

The state does not claim, nor is there any evidence in the record, that Royal Miller acted as the representative of any person in doing any of the things mentioned in section 2538. And so, if the appellee, Royal Miller, is guilty of the charge as made by the state, it shall be because of the wording of the first paragraph, after the word "or", which says, "who publicly profess to assume the duties incident to the practice of medicine or surgery". Thus we must look to the record to see whether or not there is evidence to show that Royal Miller publicly professed to assume the duties incident to the practice of medicine and surgery. In the case at bar the appellee neither held himself out as a physician and surgeon, nor did he publicly assume to perform the duties of a physician and surgeon. At no time did he make physical examinations or diagnose the ills or ailments of his patients or prescribe medicine. His statements to his patients were universally that he would help them if he could. His treatment was the laying on of his hands, or at most a slight massage at the back of the neck and head. He made no charge, but accepted voluntary offerings of about $2 per treatment. He had no

office, but met his patients by private arrangement at his home or at a room at a hotel. He had no advertisement on his door. He had no cards. He published no advertisements in the newspapers. He never claimed, privately or publicly, to any human being that he was a physician and surgeon or that he had assumed the duties of a physician and surgeon. He told his patients that he did not know where he got his power unless he got it from the Savior. The record does not show that he at any time ever made any diagnosis of the condition of any of his patients, or that he told them that he could cure them. All he would say to them was that he would help them if he could, and the record affirmatively shows that in a great many cases where he saw that he was not doing any particular good he would send the patient to a physician and surgeon.

In the case of State v. Hughey, reported in 208 Iowa, on page 842, 226 N. W. 371, 372, the court says:

"Under the present statute a mere public profession to cure or heal does not of itself constitute a crime."

And so, even if Royal Miller had claimed to be able to cure or heal, that in itself would not, under the present statute, justify the court in issuing an injunction. But there is nothing in this record that shows that Royal Miller, at any time made any claim that he could cure or heal. His claim was that he got his power from the Savior; that through faith one could be healed. There are a great many people who believe, and certain churches that teach, that through faith one can be healed and cured. Certainly there is nothing in the statutes of this state that would permit the courts of this land, by injunction, to bar them from the exercise of their power.

The case at bar is easily distinguishable on its facts from the case of State v. Hughey, above cited. In the Hughey case the defendant maintained a room or office for the purpose of receiving patients. In the case at bar the appellee had no room or office for receiving patients. In the Hughey case he advertised himself as a magnetic healer. In the case at bar the appellee did not advertise. In the Hughey case he had a professional card, which defendant used for advertising purposes, while in the case at bar the appellee had no card and used no advertising of any kind. In the Hughey case the defendant told his patients what they were suffering from. Some he told they had liver trouble, others tuberculosis, heart trouble, stomach trouble, and other diseases. In other words, he made a

diagnosis of the patients, and informed them what disease they were suffering from. In the case at bar Royal Miller did not tell the patients what they were suffering from, and made no diagnosis, and did not claim that he could cure them.

The state emphasizes the fact that Royal Miller at different times was called "doctor" and that at one time he had in the telephone book before his name the initials "Dr.". The record shows that Royal Miller was a farmer, that he had lived for a great many years on a farm, and that for years he had been called by his neighbors and his friends "Doc." and that for a while he carried the initials "Dr." in front of his name in the telephone directory; that when advised some years ago that this should not be done he immediately dropped the initials "Dr." and for the past few years his name has appeared as "Royal Miller". It seems to us that no weight can be attached to the fact that he was called by his friends and neighbors "Doc.". There are many kinds of doctors. Besides, in this country it is a common practice to use nicknames. Often druggists' clerks are called doctors; often some well-known town character, not versed in the law, is called "Judge"; and some country school teachers are called professors.

Certainly, upon the record here disclosed, the lower court was right in its refusal to grant the injunction, and the judgment of the lower court must be, and it is hereby, affirmed.

KINDIG, C. J., and STEVENS, ANDERSON, and KINTZINGER, JJ., concur.