STATE of Iowa, Appellee,

v.

Albert MILLER, Appellant.

No. 94–1576.

Supreme Court of Iowa.

Dec. 20, 1995.

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, Gerald N. Partridge, County Attorney, and Barbara Edmondson, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

Albert C. Miller appeals from his convictions for practicing medicine without a license. He urges that he did not knowingly and intelligently waive his Sixth Amendment right to counsel, and that the record contains insufficient evidence to support his convictions. We affirm the judgment of the district court.

*I. Background Facts and Proceedings.*

Miller was charged by a trial information with seven counts of practicing medicine without a license. Counts I through VI involved violations of sections 147.2 and 147.103A(1) of the Iowa Code, 1991 (as amended). Count VII involved a violation of Iowa Code sections 147.2 and 147.86 (1991).[1] Miller appeared at all pre-trial proceedings without counsel and represented himself at trial on July 14, 1994.

Several persons testified at trial describing treatments they received from Miller in his home for various ailments. His usual method of treatment was to put a lock of the person's hair or a photograph of the person into a machine called a radionics device. After recording numerous readings from the device on a chart, he would treat the person by administering mild electric shocks from a "function generator," massaging the person's feet or neck, or placing large magnets next to the person. In addition, he often sold or recommended natural vitamins or nutrients to the people who visited him. Although Miller did not charge for the treatments, he consistently accepted donations of $10 for each treatment. He did not have any license to practice medicine, osteopathy, or surgery.

Dr. John Renner, M.D., Director of the Consumer Health Information Research Institute, testified as an expert witness for the State. He found the various treatments and vitamins given by Miller to his patients, while not necessarily harmful, were generally not medically useful. In his opinion the primary danger was not from the medicine itself, but from the fact it delayed appropriate, potentially beneficial, medical treatment.

On July 14, 1994, the jury returned verdicts finding Miller guilty on all seven counts. He was sentenced to a term of incarceration not to exceed five years on six counts. On the seventh count, he was sentenced to four months in the county jail. All the sentences were suspended and Miller was placed on probation for five years.

---

1. On July 1, 1992 a new section was passed providing that a person violating section 147.2 shall upon conviction be guilty of a class D felony. 1992 Iowa Acts ch. 1183, § 9. Previous-ly, the same violation was a serious misdemeanor. Iowa Code §§ 147.2, 147.86 (1991). Count VII of the trial information was alleged to have occurred before July 1, 1992.

## II. *Waiver of Right to Counsel.*

■■■ The Sixth and Fourteenth Amendments to the federal constitution guarantee state criminal defendants the right to have the assistance of counsel. *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566 (1975). A defendant can waive the right to counsel and assert a right of self-representation as long as the waiver is voluntary, knowing, and intelligent. *Id.* at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581; *State v. Hutchison*, 341 N.W.2d 33, 41 (Iowa 1983). The defendant's election to proceed without counsel must be clear and unequivocal. *State v. Spencer*, 519 N.W.2d 357, 359 (Iowa 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 642, 130 L.Ed.2d 548 (1994); *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582.

■■■ The Supreme Court has imposed "rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial." *Patterson v. Illinois*, 487 U.S. 285, 298, 108 S.Ct. 2389, 2398, 101 L.Ed.2d 261, 276 (1988).

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582 (citation omitted).

■■■ Because Miller's constitutional right to counsel is at issue, our review is de novo of the totality of the facts and circumstances. *Spencer*, 519 N.W.2d at 359. We examine the record as a whole to determine whether Miller knowingly and intelligently waived his right to counsel. *Id.* at 360.

■■■ At Miller's arraignment on May 9, 1994 the following colloquy occurred:

> THE COURT: Mr. Miller, you understand that you're here to be arraigned today on a Trial Information which has in it seven counts, most of which are felonies I believe.
>
> You are entitled to be represented by counsel. If you cannot afford counsel, if you qualify, I will appoint counsel to represent you. Do you wish to have counsel with you at this time?
>
> THE DEFENDANT: Your Honor, may I choose whom I want for counsel?
>
> THE COURT: Within reason, sure.
>
> THE DEFENDANT: Okay. I choose to represent myself.
>
> THE COURT: Okay. Do you understand that these charges are serious and that by representing yourself you are placing yourself in a position where you would have to understand all of the procedure and statutory rules that apply to trials and to representation of a criminal defendant?
>
> THE DEFENDANT: Yes.

Shortly after this exchange, Miller answered all questions for the remainder of the proceedings with the response, "I stand mute." At the conclusion of the proceedings the court recommended that Miller seek the assistance of legal counsel:

> I would suggest to you, and this is the best advice you are going to get this morning, that you seek legal counsel to help you with your defense. Whether you have counsel at trial is your business, but it would certainly be in your best interest to at least visit with legal counsel about what you are getting yourself into before you appear for trial.

Two days later Miller filed a "Notice and Demand for Counsel of Choice" which demanded the court "recognize his Right to Counsel or co-counsel who is not a member of the State Bar Association and who is not a licensed attorney." The court responded with the following calendar entry:

> If defendant wants court appointed counsel he is required to file a financial affidavit. Clerk to mail defendant an affidavit for his review. If defendant wishes he may complete the affidavit and request court appointed counsel otherwise he is responsible for securing his own counsel or proceeding pro se.

At the pre-trial hearing conducted on June 27, 1994, the subject of representation by counsel was again discussed:

> The Court has indicated by calendar entry that if Defendant wishes Court appointed counsel, he must file the financial affidavit and make formal request for appointment, otherwise he will be proceeding pro se or will be responsible for obtaining his own legal counsel.

After disposing of other matters, the court again addressed the defendant:

> THE COURT: ... You are further instructed at this time that you—unless you appear with counsel, that you will be responsible for the—knowing the rules of the Court and of evidence in that you will be held to the same requirements as any attorney would be in trying a jury case. That the State is entitled to a fair trial just like you're entitled to a fair trial. And we all need to play by the same rules so you need to keep that in mind. Do you plan at this time to proceed by yourself or to have counsel with you?
>
> THE DEFENDANT: At this time I plan to proceed by myself.

The court then explained court proceedings:

> It essentially starts with jury selection. You'll have an opportunity to present an opening statement, then we'll have the case put on by the State of Iowa. When the State's finished with their case, you'll have an opportunity to put yours on if you wish to do so. You'll have an opportunity to present final arguments to the jury and the jury will deliberate and make a decision. You, of course, have a right to cross-exam all the State's witnesses, just as the State has the right to cross-exam your witnesses, including yourself, if you decide to testify. You do not have to testify since you are the Defendant, but if you do decide to testify, then you subject yourself to a complete cross-examination. Do you understand that?
>
> THE DEFENDANT: Okay.

After the State gave Miller a box containing copies of all documents seized from his house, Miller again raised the counsel issue:

> THE DEFENDANT: Okay. You didn't review anything on the Notice and Demand for Counsel of Choice.
>
> THE COURT: The only thing I've done on counsel is I've indicated to you through that calendar sheet if you want Court appointed counsel, you must fill out an affidavit. If you qualify, I will appoint counsel for you. That's the only way you get counsel appointed.
>
> THE DEFENDANT: I can't have counsel of choice then otherwise?
>
> THE COURT: Well, I am not saying that you won't, I'm just saying for me to appoint and for the State to pay for....
>
> THE DEFENDANT: Oh.
>
> THE COURT: ... you have to fill out the affidavit. You can pick your own attorney if you pay for it, obviously.
>
> THE DEFENDANT: Yeah, I prefer to have other counsel.
>
> THE COURT: Now if you qualify for Court appointed counsel and I say, okay, you qualify, who do you want, and if it's an attorney in this area, I have no problem with that.
>
> THE DEFENDANT: Yeah. I'm—I would want to appoint my own counsel.
>
> THE COURT: Well, that means you pay for your own counsel.
>
> THE DEFENDANT: Yeah.
>
> THE COURT: And you're certainly able to do that. You can hire anybody that you want.
>
> THE DEFENDANT: Is that in the records?
>
> THE COURT: Sure. Everything we say here is in the records.
>
> THE DEFENDANT: Okay.
>
> THE COURT: They just have to be a member of the Iowa Bar.
>
> THE DEFENDANT: Now is that included?
>
> THE COURT: Well, to practice in this Court you have to be a member of the Iowa Bar. You have to have passed the Bar in the State of Iowa to practice in this Court.
>
> THE DEFENDANT: Is that according to consultation or is that....

THE COURT: That's according to the laws of the State.

On June 29, 1994 Miller filed a "Waiver of Speedy Trial and Motion for Continuance" which contained the following statements:

3. The Accused is compelled to do his own legal research because he cannot afford an attorney. The Accused needs more time to do discovery and to research the law.

4. The Accused understands that he has a right to defend himself. *Faretta v. California,* 422 U.S. [at 806, 95 S.Ct. at 2527]. The Accused also understands that the court should make exceptions for the Accused, since his is compelled to defend himself. *Haines v. Kerner,* 404 U.S. [at 519, 92 S.Ct. at 595].

The motion to continue was denied and trial commenced on July 14, 1994. Miller had not filed an application for appointment of counsel.

We believe that the district court adequately advised Miller of his right to counsel, explained the nature of the charges, and warned of the ramifications of self-representation. The court several times told Miller that if he wanted court-appointed counsel he would have to file an application and affidavit showing he was indigent. The court even had the clerk mail him an affidavit. Despite these admonitions, Miller had not filed an application for counsel at the time of trial.

We also believe Miller was competent to make the choice of self-representation. *See Spencer,* 519 N.W.2d at 361. He was sixty-five years old at the time of trial and had been self-employed in the water treatment business. Although Miller lacks a formal education beyond the eighth grade, he appeared to be intelligent, articulate, and an adequate advocate throughout the proceedings as illustrated by using cross-examination of the State's witnesses to, in effect, testify on the merits of his case. He filed a total of fourteen pro se pleadings in the case; four of the pleadings addressed the right to counsel.

■ We reject Miller's argument that his case was too complicated to allow self-representation. *See id.* at 359; *cf. State v. Hindman,* 441 N.W.2d 770, 772 (Iowa 1989) ("Where the offense is readily understood by laypersons and the penalty is not unduly severe, the duty of inquiry which is imposed upon the court is only that which is required to assure an awareness of right to counsel and a willingness to proceed without counsel in face of such awareness."). He had prior experience with the justice system involving similar charges and procedures. In 1993 he was found guilty by an Illinois jury on thirteen of fifteen counts of unlawful practice of medicine without a license. In that trial, Miller was represented by counsel. He was certainly aware of the dangers and disadvantages of self-representation when he elected to represent himself before our Iowa courts.

■ It is clear that Miller was not interested in representation by a licensed attorney, but desired to be represented by unlicensed counsel instead. In his "Brief in Support of Notice and Demand for Counsel of Choice," he argues explicitly and at length that he is entitled to representation by unlicensed counsel. When he was advised, correctly, that he could not be represented by unlicensed counsel, he clearly and unequivocally chose to represent himself. Consequently, we hold that Miller knowingly and intelligently waived his right to counsel.

### III. *Sufficiency of Evidence.*

■ We must uphold the jury's verdict unless the record lacks substantial evidence to support the charges. *State v. Liggins,* 524 N.W.2d 181, 186 (Iowa 1994). Substantial evidence is evidence which could convince a rational jury the defendant is guilty of the crimes charged beyond a reasonable doubt. *Id.* We consider all of the evidence in the record, not just the evidence supporting the verdict, in the light most favorable to the State. *State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980).

■ Miller was charged with practicing medicine and osteopathic medicine in violation of Iowa Code section 147.2. Two separate instructions were given to the jury defining the practice of medicine and osteopathic medicine. One instruction, which was patterned after Iowa Administrative

Code rule 653–10.1, provided the following definition:

> The practice of medicine and osteopathic medicine means holding one's self out as being able to diagnose, treat, or prescribe for any human disease, pain, injury, deformity, or physical or mental condition and who shall either offer or undertake, by any means or methods, to diagnose, treat, or prescribe for any human disease, pain, injury, deformity or physical or mental condition.

The other instruction provided that the following "persons shall be deemed to be engaged in the practice of medicine and osteopathic medicine":

1. Persons who publicly profess to be physicians or who publicly profess to assume the duties incident to the practice of medicine and osteopathic medicine.

2. Persons who prescribe, or prescribe and furnish medicine for human ailments.

This instruction is based on Iowa Code section 148.1 and states the definition which has been used in our previous cases. *See* Iowa Code § 147.2 (unlicensed "person shall not engage in the practice of medicine ... as defined in the following chapters of this title"); *see also, e.g., State v. Robinson,* 236 Iowa 752, 753, 19 N.W.2d 214, 215 (1945); *State v. Hueser,* 205 Iowa 132, 134, 215 N.W. 643, 643 (1927). The instruction based on the Iowa Administrative Code, although a more specific definition, is neither inconsistent nor an incorrect statement of the law. 1978 Op.Iowa Att'y Gen. 874; *see State v. Hughey,* 208 Iowa 842, 846, 226 N.W. 371, 373 (1929) (upholding jury instruction providing that "the duties incident to the practice of medicine and surgery" include "the holding out of one's self as a physician").

Miller argues that he did not publicly profess to be a physician or publicly profess to assume the duties incident to the practice of medicine and osteopathic medicine. He emphasizes that he never advertised nor described himself as a doctor; he would sometimes recommend that his customers consult a licensed physician or chiropractor; and he only met people in his home, not in an office.

We conclude there is sufficient evidence to conclude that Miller publicly professed to assume the duties incident to the practice of medicine and osteopathic medicine. We have defined the "duties incident to the practice of medicine" to include diagnosing patients' ailments and prescribing the proper treatment. *Hughey,* 208 Iowa at 846–47, 226 N.W. at 373. *See State v. Heath,* 125 Iowa 585, 590, 101 N.W. 429, 431 (1904) (applying statute to persons administering "magnetic treatments"); *State v. Edmunds,* 127 Iowa 333, 338, 101 N.W. 431, 433 (1904) (similar statutes "have been held to apply to magnetic healers"). Witnesses testified that they were treated by Miller for various ailments including arthritis, rash, infection, headaches, constipation, and neck, shoulder, and back pain. Although he may not have referred to himself as a doctor, he led his customers to believe that he could diagnose and treat their ailments. Even though Miller did not formally advertise his treatments, he gained a large local customer base by means of referral from one customer to another. The fact that Miller would sometimes recommend that his customers consult a licensed physician or chiropractor does not detract from the fact that he would diagnose and treat their physical conditions, at least up to a certain point.

■ We also conclude there was sufficient evidence that Miller routinely prescribed and furnished medicine. Miller argues that he sold or recommended only natural vitamins or nutrients. His defense, through the testimony of a witness, was the vitamins and nutrients were not medicines, but food.

We have broadly construed the statutory words "prescribe and furnish medicine" to include administering any substance or remedy in the treatment of an ailment or disease. *See State v. Bresee,* 137 Iowa 673, 677–78, 114 N.W. 45, 47 (1907); *see also Hueser,* 205 Iowa at 135, 215 N.W. at 644 (upholding the definition of prescribe as the "designation of a remedy for an ailment or disease after having, by investigation, observation, or an inquiry, ascertained the apparent nature thereof"); Webster's Third New International Dictionary 1402 (1971) (defining medicine

as "a substance or preparation used in treating disease"). The fact that a substance may also have value as a food "will not deprive of its character as a medicine if it be administered and employed for that purpose." *Bresee*, 137 Iowa at 677–78, 114 N.W. at 47.

> It is evident [the defendant] was catering to patronage of the sick who were asking relief from their ills, and, if [he] listened to their statements, assured them of [his] ability to help them out, and supplied them with [his] alleged appropriate remedies giving instructions for their application or use, this would seem to come ... within the ordinary and usual signification attached to the words "prescribing" or "prescribing and furnishing medicines," as they are commonly used and understood.

*Id.* We believe Miller's actions of selling or recommending natural vitamins to his customers constitutes furnishing a substance or remedy for treating their ailments.

We conclude there is sufficient evidence to convince a rational jury beyond a reasonable doubt that Miller was guilty of practicing medicine and osteopathic medicine without a license.

**AFFIRMED.**